**COLUMBUS (City), Plaintiff-Appellee, v. HOHMAN, Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 5489.   Decided October 29, 1956.

Chalmers P. Wylie, City Atty., William T. Gillie, City Pros., Columbus, for plaintiff-appellee.

John L. Rittinger, Columbus, for defendant-appellant.

## OPINION

By THE COURT.

Appellant was charged in the Columbus Municipal Court with the violation of Section 18.65, City Ordinance, in that, "on the 11th day of February, 1956, at the City of Columbus, he did unlawfully leave valve open on gasoline truck while putting gasoline in underground tank, leaving immediate vicinity of tank truck which resulted in the overflow of 200 gallons of gasoline." That part of the ordinance to which the affidavit is applicable reads:

"All tank trucks delivering petroleum liquid shall have approved vent and draw-off faucets and **the person in charge shall remain at the valve while delivery is being made.**" (Emphasis ours.)

After the City and the defendant had rested, the trial judge found the defendant guilty as charged and pronounced sentence upon him. Appellant assigns four errors, three only of which are specific:

1. That the court erred in overruling defendant's motion to dismiss at the close of plaintiff's testimony and at the close of defendant's testimony.

2. That the court erred in failing to set aside the judgment of said court upon motion for a new trial and to grant appellant a new trial.

3. That the decision was contrary to law and against the weight of the evidence.

At the conclusion of the case made by the City, counsel for defendant moved for dismissal on the grounds that no showing had been made that the defendant was in the station while the gasoline was running and that it did not appear when defendant went into the station.

The only testimony going to the material elements of the offense, except the fact that defendant was putting gasoline in an underground tank, is that of two officers of the Fire Department of the City of Columbus.

Lt. Iloe Ogborn testified as follows: That he had been sent to the gasoline station where the gasoline had overflowed; that he found that much gasoline had overflown on the ground at the rear of the station; he stated that he presumed that this gasoline came from an overflowing tank; (not probative); he told what was done to relieve the situation and to dispose of the gasoline and then at page 5, et seq., of the record, these questions and answers:

"Q. Did you talk with this defendant out there?

"A. He told me upon arrival, he showed me where it was at.

"Q. What did he tell you? Did you have conversation with him?

"A. He told me he lost about two hundred gallons of gas.

"Q. What else did he tell you, if anything?

"A. He said he had been in the station.

"Q. And where are these storage tanks located, in the front or the rear?

"A. The filling pipes are in the rear of the station, rear of the building.

"Q. That is you fill them from the tank truck in the underground tanks in the rear, is that right?

"A. That's right.

"Q. Was that all the conversation you had with him?

"A. That's all, sir."

On cross-examination:

"Q. Did he tell you when he was in the station?

"A. No, sir.

"Q. He didn't tell you when it was he went in the building?

"A. That he had been in the building is what he said."

Manifestly, this testimony is not of sufficient probative effect, if true, to establish the controverted essentials of the offense charged.

Lee Specht, Lieutenant in the Fire Prevention Bureau, present at the site of the overflow of the gasoline, testified as follows:

"Q. I will ask you if you were out at Parsons and Deshler at the Standard Oil Station out there?

"A. Yes, sir.

"Q. About what time were you there?

"A. I received the call at 11:08 P. M.

"Q. What did you do after arriving there?

"A. The only thing seen on the report said gasoline spilled out there.

When I arrived at the scene No. 5 Pump Company had water on it. There was quite an amount of gasoline spilled. I talked to the defendant and I asked him how much gasoline he thought got away. He told me about two hundred gallons.

"Q. Did he tell you how it happened?

"A. I asked. He said he went inside the station to make up some bills."

This last question and answer afford the only basis of proof of the material averments of the affidavit which are controverted, namely, that the defendant left a valve open on a gasoline truck while delivery was being made.

An inference may be drawn that the gasoline which was spilled on the ground was so spilled by leaving the valve open which controlled the flow, but this does not rule out the inference that the gasoline may have overflowed at a time when the defendant was not delivering gasoline to the underground tank. The evidence for the City that the defendant said that the overflow happened when he went inside the station to make up some bills does not necessarily require that the happening to which he referred was leaving the valve open while he was in the act of filling the tank.

Proof that the defendant was in charge of the tank truck did not appear from the testimony of the City, but was only developed by a witness for the defense.

The meager testimony produced by the City, in chief, failed to establish all the essentials incumbent upon it to prove. Too many inferences must be drawn from the statement of defendant as told by Lt. Specht, if true, to support the conviction of defendant upon the case made by the City when it rested.

No citation of authority is necessary for the proposition that in a criminal case proof must be beyond a reasonable doubt and must dispel every reasonable inference of innocence.

We are of the opinion that the motion to dismiss should have been sustained at the conclusion of the City's case.

However, if the City made a case which entitled it to go to the jury, then the explanation of the defendant together with his supporting testimony of how the overflow occurred is convincing that he should not have been convicted.

As we have said, the only testimony of an incriminating character was the alleged statement of the defendant that the overflow happened when he went into the station. Defendant testified that not only was he at all times within arm's reach of the valve controlling the flow of the gasoline, but that he did not go into the station during the overflow or until after it had occurred. He and a station attendant testify that he was in the station before he began to unload the gasoline and after the overflow. The attendant says that had the defendant been in the station at the time attributed to him by his statement to the officer, the attendant would have known of his presence and that he was not there.

The further explanation of the defendant that the overflow occurred

after eleven o'clock at night; when he faced the supply tank on the truck where the valve was his back was to the tank which was being filled; that he could not see the flow of the gasoline because of the dimness of the light and that he could not hear the movement of the gasoline into the truck because of the noise in the street where the station was located.

The class of testimony upon which the defendant was convicted, a statement against him by a report of a conversation, must be cautiously considered and such testimony is many times unreliable not because the witness wilfully distorts the conversation, but because of the possibility of error in the tendency of the witness to interpret a conversation as he understood it. **12 O. Jur. 382.**

The errors assigned are well made.

The judgment of this court will be a vacation of the sentence and judgment and a dismissal of the charge against the defendant.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.