STATE v. SCHULTZ.

[Cite as State v. Schultz, 1 Ohio Misc. 81.]

(No. T 324988—Decided May 20, 1964.)

CRIMINAL ACTION:   Toledo Municipal Court.

KIROFF, J.   The defendant herein was charged by affidavit with the violation of Section 4511.251, Revised Code.

To this affidavit the defendant filed a motion to quash, which was overruled, and then the defendant filed a demurrer alleging substantially as follows:

1. That the facts stated in the affidavit do not constitute an offense punishable by the law of the State of Ohio.

2. That intent is not alleged therein, proof of such intent being necessary to make out the offense charged.

3. That Section 4511.251, Revised Code, is unconstitutional because it deprives the accused of the presumption of innocence and that it predicates a rebuttable presumption upon a rebuttable presumption.

A close inspection of the issues raised by the defendant indicates that they are interrelated and the reason for this lies in the creature the legislature has created in the drag racing statute.   Attorney John H. Morgan is to be complimented on his briefing and presentation of the issues involved herein.

Section 4511.251, Revised Code, reads as follows:

"(A) Drag racing is defined as the operation of two or more vehicles from a point side by side at accelerating speeds in a competitive attempt to out-distance each other or the operation of one or more vehicles over a common selected course, from the same point to the same point, wherein timing is made of the participating vehicles, involving competitive accelerations or speeds.   Persons rendering assistance in any manner to such competitive use of vehicles shall be equally charged as the participants.   The operation of two or more vehicles side by side either at speeds in excess of prima facie lawful speeds established by divisions (A) to (G), inclusive, of Section 4511.21, Revised Code or rapidly accelerating from a common starting point to a speed in excess of such prima facie lawful speeds shall be prima facie evidence of drag racing.

(B) No person shall participate in a drag race as defined in division (A) of this section upon any public road, street, or highway in this state."

An examination of Section 4511.251, Revised Code, discloses that the operation of two or more vehicles side by side at speeds in excess of the prima facie lawful speed limits, shall be prima facie evidence of drag racing and to establish the prima facie case the prosecution need not prove competition as contained in the definition of drag racing in the first portion of this section of the code.

The legal effect of "inferences" and "prima facie evidence" have created a great deal of the confusion in the law as to their meaning and effect and especially with regard to the criminal law where the presumption of innocence and the burden of proof are sacrosanct.

There seems to be no question that the legislature has the power to prescribe rules of evidence and may provide that certain facts may be prima facie and presumptive evidence of other facts.

But is there a limitation on this legislative power?

The urge for simplifying the task of the prosecutor in certain cases by requiring the defendant to go forth with the evidence on some of the issuable facts in the case is balanced by the fear that if we go too far in this direction, we shall find some day that we have substituted an inquisitorial procedure for our traditional and customary accusatory system.

There are several approaches to the limits to be placed on the power of the legislature and at one end of the ladder there is the position taken by Wigmore that the legislature has the entire control over the rules of evidence and procedure.

"(a) A rule of presumption is simply a rule changing one of the burdens of proof, i. e., declaring that the main fact will be inferred or assumed from some other fact until evidence to the contrary is introduced. There is not the least doubt, on principle, that the Legislature has entire control over such rules, as it has (when not infringing the Judiciary's prerogative) over all other rules or procedure in general and Evidence in particular—subject only to the limitations of the rules of Evidence expressly enshrined in the Constitution. If the Legislature can abolish the rules of disqualification of witnesses and grant the rule of discovery from an opponent, it can shift the burden of producing evidence." 4 Wigmore, *Evidence* (3d Ed., 1940) 724, Section 1356.

A second approach is the widely accepted rational connection tests as set forth in *Mobile, J. & K. C. R. R.* v. *Turnipseed*, 219 U. S. 35, 31 Sup. Ct. 136 (1910), where the Court stated as follows:

"That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate."

For a recent discussion of the rational connection doctrine see *Sipes* v. *United States*, 321 Fed. 2d 174 (1963).

A third approach termed "the greater includes the less" is set forth in the case of *Ferry* v. *Ramsey*, 277 U. S. 88, 48 Sup. Ct. 443 (1928), where the Court stated in paragraph 4:

"The statute in short imposed a liability that was less than might have been imposed, and that being so, the thing to be considered is the result reached, not the possibly inartificial or clumsy way of reaching it. If without any mention of assent or presumptions or prima facie evidence the statute had said: 'Every director of a bank shall be personally liable to depositors for every deposit accepted by the bank after it has become insolvent,' all objections would be met by the answer, 'You took the office on those terms.' The statute would be none the worse if it allowed a defence in the single case of the defendants having made on honest examination and having been led to believe that the bank was solvent."

A fourth approach as to the validity of statutory presumptions is that a presumption may have validity if the defendant has peculiar knowledge of the facts presumed and superior access to the proof. For a recent consideration of this doctrine see *Manning* v. *United States*, 274 Fed. 2d 926.

A complete discussion of the power of the legislature with respect to statutory presumptions in criminal cases is set forth in *McCormick On Evidence* (1st Ed., 1954) 654, Section 313. McCormick states, at page 661, that in a civil case we may concede that the legislature, or the court through its rule-making power, could validly provide that the defendant should have both the burden of evidence and the burden of persuasion to

disprove all averments in the plaintiff's statement of claim. In the realm of criminal prosecutions, however, McCormick points out that the case is quite different. The traditional common-law procedure emphasized the general rule that the burden of evidence and the burden of persuasion are upon the government to establish the guilt of the accused. McCormick states as follows:

"True, this rule was not quite universal because a few facts, such as self-defense, insanity, and license, were treated as defenses, rather than elements of the case for the prosecution, and the burden of first producing evidence to raise the issue is placed on the defendant. However, even as to these in most states he does not carry the burden of persuasion but will win if he raises a reasonable doubt on the issue. And the range of these facts which the defendant must prove has always been narrower than in civil cases.

"Moreover, this rule that the prosecution has the burden of proving all facts necessary to show the crime and of establishing guilt beyond a reasonable doubt is not merely a happenso of procedure. It embodies a policy which, in the last one hundred and fifty years at least, has been considered an important safeguard of the individual citizen against injustice and oppression. This policy is given form and color by the paradoxical maxim, that one who is accused of crime is presumed to be innocent. In the light of this traditional policy, it may be arguable that in criminal cases there is a deprivation of due process if the legislature goes too far in transferring to the accused by means of a presumption the initial burden of producing evidence, so that the accused, before there is any substantial showing of guilt, is required to prove his innocence."

The Supreme Court of the State of Ohio has spoken on the question of presumptions in criminal cases in the case of *Hammond* v. *State*, 78 Ohio St. 15, in which the court stated as follows:

"It may be conceded that within proper constitutional limits, the legislature has the general power to prescribe rules of evidence and methods of proof—to determine what may or may not be competent evidence in a particular case—and, with certain qualifications, has perhaps the power to enact and prescribe that in criminal prosecutions certain facts, when duly

established, shall be held to be presumptive or PRIMA FACIE evidence of guilt. But this power is not without its limitations, one of which is, that the legislature may not arbitrarily create a conclusive presumption of guilt against the accused, as to any element of the crime charged, by giving artificial and evidential force and effect to certain facts which otherwise would be wholly irrelevant and inconclusive. It has well been said, that presumptions of law—at the best uncertain instruments in the investigation and discovery of truth—are especially dangerous in the administration of criminal justice when used to control or impair the natural fundamental presumption of innocence, their effect being, to give to evidence a technical probative force beyond that which it would naturally and ordinarily possess in producing conviction in the minds of the jury."

In view of the above theories, did the legislature of the State of Ohio have the power to enact that portion of the "drag racing" statute which makes operating a motor vehicle side by side in excess of the prima facie speed limits and without proof of competition, a prima facie case of drag racing?

Before coming to a conclusion with respect to the statute, the following must be considered:

First, in the State of Ohio, under the provisions of Section 4511.21, Revised Code, there is no fixed speed limit. In this regard see *Robinson* v. *Ferguson*, 105 Ohio App. 31; *Tenhunfeldt* v. *Parkway Taxi Cab Co.*, 105 Ohio App. 425.

Second, generally guilty knowledge or intent is an essential element in a statutory crime and an act is not criminal unless the intention accompanies the act, either expressly or by inference by the act itself. Ordinarily, intent is not a requisite element of the various traffic offenses, unless so designated by the legislature and the question of the necessity of guilty knowledge or intent depends on the wording of the statute involved and the intent of the legislature in enacting it. And where a statute provides that an offense consists of an act committed with a specific intent, the mere doing of the act raises no presumption of specific intent and such intent, as well as the act, must be pleaded and proved. 15 Ohio Jurisprudence 2d, Criminal Law, Section 29, Pages 265, 266.

Keeping these principles in mind, is there any theory under

which the action of the legislature in enacting the presumptive portions of the drag racing section can be upheld.

The answer is plainly no.

This Court has searched through the Decennial Digest System and the various State Codes in the hopes of finding a single reported instance in which a legislature in a criminal case enacted a statute containing a presumption on a presumption. It would seem that Ohio's drag racing statute is unique in its wording and that such a statute has never been judicially tested.

It appears that Ohio follows the "rational connection doctrine." (See 21 Ohio Jurisprudence 2d, Evidence, Section 100, Page 107.) Certainly the presumptions in Section 4511.251, Revised Code, cannot be sustained under this theory.

There is no fact proved out of which the second presumption can flow simply because the statute creates a presumption on a presumption which prevents such rational connection.

Nor does this Court feel that the statutory presumption in Section 4511.251, Revised Code, can be sustained under the theories set forth in *Ferry* v. *Ramsey, supra,* or in the *Manning case, supra.* This Court flatly rejects the position of Wigmore that the power of the legislature is absolute.

The statute in question does not merely shift the burden of going forward with the evidence from the prosecution to the defendant after proof of a prima facie case. It waters down the presumption of innocence; sets forth an unreasonable and arbitrary standard of conduct and is violative of Article XIV, Section 1, Amendments, Constitution of the United States and Article I, Section 16, of the Constitution of the State of Ohio.

There is one other defect in the statute which also creates a deficiency in the affidavit filed in the case herein.

Section 4511.251, Revised Code, defines drag racing other than on a common selected course as follows:

"Drag racing is defined as the operation of two or more vehicles from a point side by side at accelerating speeds in a competitive attempt to out-distance each other . . ."

What did the legislature mean by the words "a competitive attempt to out-distance each other?" Webster's New Collegiate Dictionary defines competition as "a competition between rivals, a match, a contest." As defined in the statute,

competition means simply the intentional attempt by two drivers to out-distance each other and, therefore, the intent to race is a necessary element in the offense. In one portion of the statute the legislature has made it encumbent upon the prosecution to allege and prove competition. However, the legislature in setting forth the wording with respect to a prima facie case has completely left out any question of competitiveness or intent, rendering the affidavit in this particular case insufficient and the statute unconstitutional for the same reasons as hereinabove set forth.

There is no question that drag racing cannot be tolerated on our modern streets and highways. The dangerousness of such conduct is apparent.

But no matter how abhorrent drag racing might be, the legislature has gone too far when it requires a person to prove his innocence rather than the prosecution to prove his guilt.

The make-up of our modern streets and highways has progressed to the multiple lane status to handle heavy traffic loads and to facilitate the flow of traffic. Many of our streets and highways throughout the state and in this city are two, three and four lane roads in each direction. The Anthony Wayne Trail, which is the highway in this particular case, is three lanes in each direction. It is common for cars throughout the city and the state to start from an intersection side by side and to proceed side by side. Whenever this occurs, if the motorists should exceed the prima facie speed limit by any amount, must they be put in the position of proving they were not drag racing? And we must keep in mind that under the law of the State of Ohio, that they might not be even guilty of speeding under the prima facie speed law.

This Court thinks not.

This Court would agree that a drag racing statute is necessary but it would be very simple for the legislature to pass a statute in which the prosecution would be required to prove guilt beyond a reasonable doubt, without the benefit of a presumption on a presumption.

For the above reasons, the demurrer is ordered sustained and the affidavit herein is ordered dismissed.

*Demurrer sustained and affidavit dismissed.*