THE STATE OF OHIO, APPELLEE, *v.* GOODMAN, APPELLANT.

[Cite as State v. Goodman, 8 Ohio App. 2d 166.]

(No. 861—Decided November 1, 1966.)

*Mr. Charles B. Lang,* for appellee.
*Mr. George A. Aronson* and *Mr. Bernard Fineman,* for appellant.

LYNCH, J.   This is an appeal by defendant, appellant herein, from his conviction in the County Court for the Eastern District of Columbiana County for a violation of Section 4511.251 of the Revised Code (drag racing).

Defendant's second assignment of error is that Section 4511.251, Revised Code, is unconstitutional, and that the trial court erred in overruling his demurrer on this issue.

Section 4511.251, Revised Code, became effective November 10, 1959.  There have been several reported cases concerning this statute, including three separate Courts of Appeals cases.  The constitutionality of this statute first became an issue in the Common Pleas Court of Mercer County, in *State* v. *Stukenborg,* 89 Ohio Law Abs. 539, which was decided August 31, 1962, on an appeal from the Celina Municipal Court.  The court held that since the question of constitutionality had not been raised in the trial court it could not be considered on appeal.

However, in 1964 the issue was presented squarely before the Toledo Municipal Court which held this statute to be unconstitutional in *State* v. *Schultz,* 1 Ohio Misc. 81, which happens to be not only the most recent case on this statute but the sole reported case on the constitutionality of this statute.

The basis upon which the Toledo Municipal Court challenged the constitutionality of Section 4511.251, Revised Code, is that the following provision—"The operation of two or more vehicles side by side either at speeds in excess of prima facie lawful speeds established by divisions (A) to (G), inclusive, of Section 4511.21 of the Revised Code or rapidly accelerating from a common starting point to a speed in excess of such prima facie lawful speeds shall be prima facie evidence of drag racing"—is a presumption upon a presumption, because the speed limits set out in divisions (A) to (G), inclusive, in Section 4511.21, Revised Code, are only prima facie evidence of the violation of Section 4511.21, Revised Code. The court also stated that the presumption provided by Section 4511.251, Revised Code, waters down the presumption of innocence, sets forth an unreasonable and arbitrary standard of conduct, and "is violative of Article XIV, Section 1, Amendments, Constitution of the United States and Article I, Section 16 of the Constitution of Ohio."

We do not agree with either the reasoning or result of *State* v. *Schultz,* 1 Ohio Misc. 81, because it is the opinion of the members of this court that the above-quoted language of Section 4511.251, Revised Code, does not create a presumption upon a presumption.

Section 4511.21, Revised Code, pertains to speed regulations and provides that the speed limits set out in divisions (A) to (I), inclusive, are prima facie evidence of the violation of this statute. We are unaware that anyone has seriously contended that this presumption created by the Legislature waters down the presumption of innocence which is also provided by statute, namely, Section 2945.04, Revised Code.

The Legislature has the power to establish uniform maximum reasonable speed limits for all motor vehicles operated within the state, and many states have such statutes. 7 American Jurisprudence 2d 734, Automobiles and Highway Traffic,

Section 180. However, the Ohio Legislature has been more lenient in the matter of speed laws than other states and only creates a presumption of a violation of the speed statute when the speed limits are exceeded.

Section 4511.251, Revised Code, pertains to drag racing. The language that creates the presumption for this statute has previously been set out. It is the opinion of the members of this court that the fact that Section 4511.251, Revised Code, refers to the speed limits in divisions (A) to (G), inclusive, of Section 4511.21, Revised Code, as the speed limits to be used for standards in applying the presumption instead of repeating the language of these divisions in their entirety does not mean that it is necessary to establish a violation of Section 4511.21, Revised Code, before there can be a conviction of a violation of Section 4511.251, Revised Code.

It is our opinion that Sections 4511.21 and 4511.251, Revised Code, set out two separate, independent traffic offenses, and that the legislative intent concerning the reference in Section 4511.251, Revised Code, to the speed limits set out in divisions (A) to (G), inclusive, of Section 4511.21, Revised Code, was that, for the purpose of creating a prima facie case of drag racing, the speed limits referred to in divisions (A) to (G), inclusive, of Section 4511.21, Revised Code, are maximum speed limits.

We hold that there is a rational connection between the facts required to be established by Section 4511.251, Revised Code, and the presumption of drag racing created by this statute upon proof of such facts. Therefore, we hold that Section 4511.251, Revised Code, is constitutionally valid.

The first assignment of error pertains to the overruling of defendant's demurrer to the prosecution's affidavit, the pertinent part of which is set out as follows:

"* * * on or about the 5 day of March, A. D. 1965, at the County of Columbiana aforesaid one Donald Givens Goodman, did unlawfully operate a certain motor vehicle, to wit: a 1962 Ford Falcon station wagon bearing 1964 Ohio Registration L 328 E over and upon U. S. Highway No. 30 at approximately 2:50 p. m., did operate said vehicle at the side of another vehicle going in the same direction at the speed of 70 miles per hour in

a 45 mile an hour zone. Said operation contrary to and in violation of Section 4511.251 of the Ohio Revised Code. * * *.''

The second and third paragraphs of the syllabus of *State* v. *Cimpritz,* 158 Ohio St. 490, are as follows:

''2. The elements necessary to constitute a crime must be gathered wholly from the statute.

''3. If any material element or ingredient of an offense, as defined by statute, is omitted from an indictment, such omission is fatal to the validity of the indictment.''

It has been held that the above statements of law are applicable to affidavits. *State* v. *Latham,* 120 Ohio App. 176. See 28 Ohio Jurisprudence 2d 526, Indictment and Information, Section 101.

An examination of Section 4511.251, Revised Code, reveals that drag racing can occur in two separate situations, with the following elements:

A. 1. Two or more vehicles.
   2. Operating from a point side by side.
   3. At accelerating speeds.
   4. In a competitive attempt to out-distance each other.
B. 1. One or more vehicles.
   2. Operating over a common selected course, from the same point to the same point.
   3. Wherein timing is made of the participating vehicles.
   4. Involving competitive accelerations or speeds.

Prima facie evidence of drag racing occurs from proof of the following facts:

1. Operation of two or more vehicles side by side.

2. Either (a) in speeds in excess of the speed limits established by divisions (A) to (G), inclusive, of Section 4511.21, Revised Code, or (b) rapidly accelerating from a common starting point to a speed in excess of such speed limits.

Some confusion has arisen because of the difference in the elements of drag racing and the facts that raise a presump-

tion of such elements, and this affidavit is typical of such confusion.

This affidavit attempts to allege drag racing under situation A, but it is defective because it does not allege that the two vehicles operating side by side did so "at accelerating speeds in a competitive attempt to out-distance each other."

One of the most important elements of drag racing, and probably the most important, is the "competitive attempt to out-distance each other," because the gravamen of this offense is the increased danger to persons and property on the highway, or in the vicinity, caused by the rapid acceleration and high speeds involved in such competition, and the absorption of the drivers of the participating motor vehicles in racing with each other instead of paying attention to the rights and safety of others on the highway or in the vicinity thereof.

This is a material element of the offense of drag racing, and its omission is fatal to the validity of the affidavit. See 28 Ohio Jurisprudence 2d 432, Indictment and Information, Section 30. The defect is not aided by a verdict. *State* v. *Holbrook,* 95 Ohio App. 526. See 28 Ohio Jurisprudence 2d 497, Indictment and Information, Section 79.

Prior to the trial the prosecutor moved the court to permit the filing of an amended affidavit which had the following change after "2:50 p. m.," "in that he drove said vehicle as a participant in a drag race as defined under this section, and that he drove said vehicle in excess of the lawful posted prima facie speed limit of 45 m. p. h. to wit, 70 m. p. h. Said operation being contrary to and in violation of Section 4511.251, Revised Code of Ohio."

A similar affidavit as the above amended affidavit was held sufficient in *State* v. *Gundlach,* 112 Ohio App. 471.

The trial court overruled the prosecutor's motion, so that we only have the original affidavit before us. It was not error for the trial court to overrule the prosecutor's motion; however, it was error to overrule defendant's demurrer to the original affidavit. If the trial court had sustained defendant's demurrer, it could have permitted the filing of the amended affidavit pursuant to Section 2937.05, Revised Code.

Defendant's third and fourth assignments of error contend

that the conviction of defendant is against the weight of the evidence, and that the trial court erred in overruling defendant's motions for a directed verdict at the conclusion of the state's case and renewed at the conclusion of all evidence.

The state's case was presented upon the sole testimony of the State Highway Patrolman who made the arrest for the alleged drag racing. On the afternoon of the day this occurred, the State Highway Patrolman was parked in a cruiser at the entrance of the "Super 30 Drive-In Theater," which is located about 150 feet south of the intersection of U. S. 30 and Ohio Route 7. At this point Route 30 runs generally in a north-south direction. South of the "drive-in" theater there are two interlocking curves, first bearing to the left and then to the right. Then, there is a downgrade straightaway for approximately three-fourths mile. At the bottom, a county road dead-ends into Route 30 from the east at approximately a 90 degree angle. The highway markings are a double yellow line from the intersection of Route 30 and Route 7 to the top of the hill where the straightaway begins. The straightaway is marked as a passing zone. The speed limit for this entire stretch of road is forty-five miles per hour.

Defendant and Mark E. Hetrick, the driver of the other car, were students at Beaver Local School, which is located on Route 7, and were enroute home from school when this alleged offense took place. Defendant was driving his father's Ford Falcon station wagon and Hetrick was driving his father's Ford one-half ton pick-up truck.

The police officer testified that he observed the pick-up truck pull up and stop on Route 7 at the intersection. When the pick-up truck made a left-hand turn onto Route 30, the police officer observed the Falcon station wagon also making a left-hand turn and they both proceeded south side by side, with the pick-up truck in the right-hand lane and the station wagon in the left-hand lane across the double yellow line, for approximately two-tenths of a mile. When they approached the first curve, the station wagon pulled in behind the pick-up truck. The officer could not estimate either vehicle's speed during this time.

The officer thereupon started his pursuit. He temporarily lost sight of them, because the pick-up truck and station wagon

were in the curves. When he next saw both vehicles, they were proceeding down the straightaway. Defendant, in the station wagon, pulled to the left of center and passed the pick-up truck in a passing zone. The officer said that he was fifty feet behind the pick-up truck at that time; that the vehicles traveled side by side for approximately five-tenths mile; that he clocked both vehicles at 70 miles per hour; that the defendant passed Hetrick, pulled in front of the pick-up truck into the right lane and decelerated, and the defendant made a left-hand turn at the county road at the bottom of the straightaway; that Hetrick proceeded south on Routh 30; and that he did not remember whether any traffic was approaching north on the straightaway during the passing maneuver. The officer arrested defendant for drag racing down the straightaway.

The defendant testified on his own behalf. Other witnesses were Hetrick, the other driver, and passengers in both cars, who all denied that there was any drag racing between defendant and Hetrick, and who testified that they left the school grounds without any discussion or pre-arrangements with the occupants of the other car; that Hetrick's pick-up truck first arrived at the intersection of U. S. Route 30 and Ohio Route 7, stopped in the right-hand land and proceeded to turn left onto Route 30; that at the same time defendant arrived at the intersection, stopped in the left-hand lane and proceeded to turn left onto Route 30; and that both made their left-hand turns at a normal rate of speed.

Defendant testified that he thought that Hetrick was going to turn right onto Route 30; that he had gone a car length when he saw the pick-up truck beside him and he became slightly confused as to whether he should pull ahead or behind the pick-up truck; that as he was driving he realized that he was across the double yellow line, so he slowed his vehicle so that he could pull behind the pick-up truck, and that he got into the proper lane behind the pick-up truck about one-half way between the intersection and the "drive-in" theater; that he followed the truck to the top of the straightaway; and that, when he saw the road was clear of approaching traffic, he passed the pick-up truck, returned to the right-hand lane, slowed down, and turned left onto the county road. Both defendant and Hetrick testified

that Hetrick did not go over fifty-five miles an hour on the straightaway. Hetrick testified that he was not aware of defendant being beside him until defendant passed him on the straightaway; that as soon as he became aware that defendant was beside him on the straightaway he slowed down to let defendant pass; and that the entire passing maneuver was accomplished in 300 to 400 yards.

In our opinion it was questionable whether the state had submitted evidence to sustain a conviction of drag racing, at the conclusion of its case. The alleged drag racing took place on the straightaway. According to the police officer's testimony, two vehicles were operating side by side at speeds in excess of the speed limit. These facts standing alone would comply with the provisions of Section 4511.251, Revised Code, to establish a prima facie case against plaintiff.

However, when the two vehicles were side by side, it was a passing zone. The police officer testified that defendant passed the other vehicle at a speed in excess of the speed limit, and then decelerated his speed. Shortly afterwards, the defendant turned off Route 30 and the other car continued on Route 30.

The issue is whether this was drag racing or the overtaking and passing of a vehicle traveling in the same direction.

Sections 4511.27 to 4511.31, Revised Code, regulate the overtaking and passing of vehicles traveling in the same direction.

50 Ohio Jurisprudence 2d 189-191, Statutes, Section 216, states as follows:

"It is a fundamental rule of statutory construction that sections and acts in pari materia, that is, 'in relation to the same matter, subject or object,' should be construed together. Stated differently, it is the rule that statutes relating to the same or similar subject matter or subject of law should, where a case calling for the application of both is presented, be read together as if they were a single statute, and both should be reconciled, harmonized, and made to apply, and given meaning and effect, so as to render their contents operative and valid, if that is reasonably possible. Thus, the various statutory provisions affecting a particular subject should be construed and

applied so as to accomplish the manifest purpose of their enactment and give full force and effect to the legislative intent.''

In overtaking and passing another vehicle traveling in the same direction, a driver must accelerate his speed to out-distance the vehicle that he wishes to pass. During the passing maneuver, both vehicles will be side by side for such period of time as is necessary to complete the passing maneuver.

However, there are differences between a passing maneuver and drag racing. There is a difference in the timing of the accelerating speeds when the two vehicles are side by side. In a passing maneuver, one vehicle accelerates its speed to arrive side by side with the overtaken vehicle in order to pass but returns to its proper lane after passing. The overtaken vehicle must not accelerate its speed, and the first vehicle usually does not accelerate its speed much more as it passes the overtaken vehicle and might decelerate its speed after passing the overtaken vehicle. In situation A, drag racing commences with the vehicles traveling side by side and both vehicles accelerating their speeds. They may continue traveling side by side for some time, but they do so at accelerating speeds.

Another difference is intent. In both cases, there is an intent on the part of one driver to out-distance another vehicle. However, in drag racing, there must be a mutual intent between the drivers of two vehicles to out-distance each other. In other words, a driver has an intent to compete or race with the driver of another specific vehicle, who has a similar intent as to the first driver. In a passing maneuver, the passing driver's intent is an impersonal one directed at a vehicle proceeding directly in front of him, whose speed or operation at that time is such that he wishes to pass. The driver of the overtaken vehicle must give way to the right and must not increase his speed.

In this case, the two vehicles were side by side at two separate times and places, and the question is when the alleged drag racing commenced. If we only considered what happened on the straightaway, we hold that there was insufficient evidence to sustain a conviction of drag racing, because, instead of accelerating his speed from the point when he was side by side with the other vehicle, the defendant decelerated his speed after

he passed the other car. We hold that this would be a passing maneuver if there was no prior driving activity between these two vehicles.

However, these two vehicles were side by side when they turned left at the intersection. Defendant was not drag racing then because he did not accelerate his speed in a competitive attempt to pass the other vehicle but pulled in behind the pick-up truck. Furthermore, there is no evidence that the two vehicles were exceeding the speed limits at this time. In our opinion, the action of the defendant in pulling behind the other vehicle at this time is evidence that he did not intend to compete with the other vehicle in a race to out-distance the other vehicle.

However, even resolving the doubt in favor of the state's case and holding that the state had made a prima facie case, so that the trial court was justified in overruling defendant's motion for a directed verdict at the close of the state's case, the defendant rebutted the state's evidence and the presumption created by it so thoroughly that it was error for the trial court to have overruled defendant's motion for a directed verdict at the conclusion of all the evidence.

Specifically, there was insufficient evidence to establish that defendant was operating his motor vehicle in a competitive attempt to race the other vehicle. A presumption as to this arose as a result of a prima facie case, but defendant overcame this presumption with rebutting evidence. This is not a case of weighing conflicting evidence; it is a case of insufficient evidence to sustain a conviction.

The first paragraph of the headnotes of *City of Columbus* v. *Hohman,* 75 Ohio Law Abs. 417, is as follows:

"In a criminal case proof must be beyond a reasonable doubt and must dispel every reasonable inference of innocence."

The fifth paragraph of the headnotes of *Bixler* v. *State,* 18 Ohio Law Abs. 117, which is a decision of this court, is as follows:

"It is the duty of a jury in a criminal case, and of the trial judge where the jury is waived, to reconcile all of the proven facts and circumstances on a theory consistent with the innocence of the defendant, if it can be reasonably done."

See *Miller* v. *State,* 125 Ohio St. 415, at page 418; 15 Ohio

Jurisprudence 2d 635, Criminal Law, Section 467, and page 764, Section 597.

We hold that the evidence does not establish beyond a reasonable doubt that defendant was drag racing rather than overtaking and passing the other vehicle.

The judgment is reversed, and final judgment is rendered for defendant. The defendant is ordered discharged from custody.

*Judgment reversed.*

JOHNSON, P. J., and JONES, J., concur.