The STATE of Ohio, Appellee,

v.

PRESTON, Appellant.

[Cite as *State v. Preston* (2001), 142 Ohio App.3d 619.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2000–06–125.

Decided May 7, 2001.

*Michael J. Davis,* for appellant.

VALEN, Judge.

Defendant-appellant, Patricia Preston, appeals her conviction in Hamilton Municipal Court for street racing. This opinion is based upon the record and the brief of appellant. The city of Hamilton has again failed to file a brief to present its legal arguments. App.R. 18(C) provides, *inter alia,* that when an appellee fails to file a brief, a reviewing court, in determining the appeal, may accept appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action. This court has considered the legal arguments of appellant and finds that they are well taken and that appellant's conviction should be reversed.

On March 2, 2000, appellant was driving her four-door 1996 Ford Escort east on Main Street in Hamilton. At the time, she was talking to her son, who was sitting in the front passenger-side seat, about the Boy Scouts and a new collectible card that he had purchased from a friend. Appellant stopped at a red traffic light and heard the revving of a vehicle's engine to her right. This other vehicle was also stopped at the traffic light, sitting in a lane of traffic that merged into appellant's lane of traffic a short distance ahead in the road. Appellant told her son that she was "tired of all the low cars just like [*sic*] revving their engines at that intersection." When the traffic light turned green, appellant drove ahead. The other vehicle traveled in the lane to the side of appellant and, instead of merging into appellant's lane, continued to drive in the parking lane beside appellant. Shortly thereafter, appellant braked, attempting to decrease her speed to twenty-five m.p.h., the posted speed limit.

Appellant was stopped by a Hamilton city police officer and cited for street racing. Appellant pled not guilty, and the case was set for trial. At the conclusion of a bench trial, a trial judge found appellant guilty of the offense charged. Appellant filed this appeal.

In her sole assignment of error, appellant argues that her conviction for street racing should be reversed because it is against the manifest weight of the evidence.

A reviewing court will not reverse a judgment as against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. *State v. Eskridge* (1988), 38 Ohio St.3d 56, 59, 526 N.E.2d 304, 306–307. The standard for reversal based upon the manifest weight of the evidence has been summarized as follows:

" 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 547, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721.

In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

Appellant was convicted of street racing in violation of Hamilton Municipal Code 333.07, which states:

"(a) As used in this section, 'street racing' means the operation of two or more vehicles from a point side by side at accelerating speeds in a *competitive* attempt to out-distance each other or the operation of one or more vehicles over a common selected course, from the same point to the same point, wherein timing is made of the participating vehicles involving competitive accelerations or speeds.

"* * * The operation of two or more vehicles side by side either at speeds in excess of prima-facie lawful speeds established by Section 333.03 or rapidly accelerating from a common starting point to a speed in excess of such prima-facie lawful speeds shall be prima-facie evidence of speed racing.

"(b) No person shall participate in street racing upon any public road, street or highway in this Municipality. (ORC 4511.251)" (Emphasis added.)

We note from the outset that Hamilton Municipal Code 333.07 is substantially the same as R.C. 4511.251.[1] Therefore, a review of other Ohio cases interpreting R.C. 4511.251 is helpful to our determination of this case.

In *State v. Goodman* (1966), 8 Ohio App.2d 166, 37 O.O.2d 186, 221 N.E.2d 202, the Seventh District Court of Appeals examined the differences between a passing maneuver and the offense of drag racing.[2] The court noted that "[o]ne of the most important elements of drag racing, and probably the most important, is the 'competitive attempt to out-distance each other' because the gravamen of this offense is the increased danger to persons and property on the highway." *Id.* at 171, 37 O.O.2d at 189, 221 N.E.2d at 205. The *Goodman* court determined that a passing maneuver and drag racing are different in the timing of the accelerating speeds and in the intent of the drivers. *Id.* at 175, 37 O.O.2d at 191–192, 221 N.E.2d at 207–208. Distinguishing drag racing from a passing maneuver, the court stated:

"In both cases, there is an intent on the part of one driver to out-distance another vehicle. However, in drag racing, there must be a mutual intent between the drivers of two vehicles to out-distance each other. In other words, a driver has an intent to compete or race with the driver of another specific vehicle, who has a similar intent as to the first driver. In a passing maneuver, the passing driver's intent is an impersonal one directed at a vehicle proceeding directly in front of him, whose speed or operation at that time is such that he wishes to pass. The driver of the overtaken vehicle must give way to the right and must not increase his speed." *Id.*

█ The failure of the prosecution to establish beyond a reasonable doubt that a defendant and another driver were accelerating their speeds in a competitive attempt to outdistance each other merits reversal of a drag racing conviction as against the manifest weight of the evidence. *Id.* at 176–177, 37 O.O.2d at 192, 221 N.E.2d at 208; *State v. Barrett* (1975), 45 Ohio App.2d 20, 22–23, 74 O.O.2d 64, 65–66, 340 N.E.2d 418, 420–421.

When determining whether the weight of the evidence establishes the intent necessary to sustain a drag racing conviction, some courts have considered

1. The only differences between these two laws are (1) where Hamilton Municipal Code 333.07 cites the city's speeding statute, the Revised Code cites its own speeding statute, and (2) where the word "municipality" appears in Hamilton Municipal Code 333.07, R.C. 4511.251 contains the word "state."

2. Until 1994, the offense now known as "street racing" was called "drag racing."

whether the drivers were acquaintances. See *Barrett* at 23, 74 O.O.2d at 65–66, 340 N.E.2d at 421; *State v. James* (1974), 41 Ohio App.2d 147, 148, 70 O.O.2d 314, 315, 324 N.E.2d 301, 302–303. Even where drivers know each other, the circumstances of a case may not merit a drag racing conviction. This court has upheld the dismissal of a defendant's drag racing charge despite the fact that the drivers knew each other and had come from the same party, where there was an absence of evidence establishing an agreement or plan to race between the drivers. *State v. Luttrell* (July 31, 1985), Clinton App. No. CA85–02–002, unreported, 1985 WL 7697.

■ At trial, Officer Joseph Gabbard testified that he observed appellant's vehicle and another vehicle accelerating at a high rate of speed. Officer Gabbard testified that he did not see the vehicles while they were stopped at the traffic light. But Officer Gabbard observed that "each [vehicle] was maneuvering to get in front of the other." Officer Gabbard testified that he visually estimated that the vehicles were traveling "anywhere from 35–45" m.p.h. in a twenty-five-m.p.h. speed zone. According to Officer Gabbard, this maneuvering continued as the vehicles traveled a distance of about sixty feet.

■ Officer Gabbard's testimony establishes a prima-facie case for street racing, as it demonstrates that appellant's vehicle and another vehicle were traveling side by side at speeds in excess of prima-facie lawful speeds. However, the presumption of intent to compete or of drag racing by reason of defendant and the driver of another vehicle operating side by side at speeds in excess of prima-facie lawful speeds prescribed by statute may be rebutted as a result of evidence offered by either party. *Barrett*, 45 Ohio App.2d at 23, 74 O.O.2d at 65–66, 340 N.E.2d at 421.

Although Officer Gabbard testified that appellant's speed exceeded the speed limit, he estimated that she was traveling at a speed of only thirty-five to forty-five m.p.h. Appellant testified that after the traffic light turned green, she "didn't take off extremely fast" because she knew that there were railroad tracks and a twenty-five-m.p.h. speed zone ahead. Appellant testified that she had been traveling at a rate of thirty-five m.p.h. (the maximum speed as posted on a sign a few blocks earlier) and that when she entered a business district, where the speed limit drops to twenty-five m.p.h., she braked immediately. Appellant admitted that she may have been speeding for a brief period of time after she passed the twenty-five m.p.h. speed limit sign and was decelerating. However, appellant testified that she was not traveling at a rate of forty-five m.p.h., stating that she did not believe her car could even travel at that speed within such a short distance from a dead stop.

Appellant testified that she was not in competition with the other vehicle and that she was not even aware that the other vehicle had continued to drive alongside her in the parking lane after the merging point. Appellant maintained that she was not drag racing.

The weight of the evidence demonstrates that appellant was speeding for at least a brief period of time and was driving alongside another driver. However, the weight of the evidence does not show a plan or agreement between appellant and the other driver to race. Appellant did not know the driver of the other vehicle. Appellant was not aware that the other vehicle continued to drive in the parking lane instead of merging behind her. Moreover, we note that appellant, who was driving in the main lane of traffic, did not have a duty to yield to the merging vehicle. There is no indication that appellant's maneuvers increased danger to persons and property on the highway, except for the fact that she briefly exceeded the speed limit.

The prosecution failed to prove beyond a reasonable doubt that the drivers were accelerating their speeds in a competitive attempt to outdistance each other. Therefore, we hold that appellant's conviction for street racing is against the manifest weight of the evidence. The assignment of error is sustained.

The judgment is reversed, and appellant is discharged.

*Judgment reversed.*

WILLIAM W. YOUNG, P.J., and POWELL, J., concur.