STATE OF NORTH CAROLINA v. WILLIAM P. JENT, JR.

(Filed 20 June, 1967.)

**1. Automobiles § 72—**

The State's evidence held amply sufficient to be submitted to the jury upon the charge that defendant operated a motor vehicle on a public highway while under the influence of intoxicating liquor. even without testimony of the results of a Breathalyzer test given defendant.

**2. Same;  Automobiles § 74;  Criminal Law §§ 32, 55—**

The provisions of G.S. 20-139.1 that a competent Breathalyzer test showing a concentration of .1 per cent or more by weight of alcohol in a person's bloodstream should create a presumption that a person was under the influence of intoxicating liquor, merely authorize, but do not compel, a jury to find that the person in question was intoxicated, and it is error for the court to charge the jury that the presumption created by the statute places the burden upon defendant to rebut the presumption. G.S. 1-180.

APPEAL by defendant from *McConnell, J.,* 8 August 1966 Session of FORSYTH, docketed in the Supreme Court as Case No. 416 and argued at the Fall Term 1966.

Defendant was first convicted in the Municipal Court of the City

of Winston-Salem upon a warrant charging that, on 24 April 1966, he operated a motor vehicle on a public highway (Corporation Parkway) while under the influence of intoxicating liquor. From the sentence imposed, he appealed to the Superior Court, where he was tried *de novo.*

Evidence for the State tended to show: About 6:45 a.m., on 24 April 1966, defendant was operating his automobile northwardly on Peters Creek Parkway, approaching its intersection with Corporation Parkway. At the same time, D. O. Swaim was approaching this intersection, driving his vehicle eastwardly on Corporation. The two cars collided in the intersection at a time when the traffic control signal was green for Corporation and red for Peters Creek. Police Officer Martin, who was in the vicinity and heard tires squealing, saw the collision. Defendant was still sitting in his car when Martin went over to investigate. He detected the odor of alcohol and asked defendant if he had been drinking. Defendant said he had and that he probably had been drinking "too much." In answer to Martin's request for an explanation of "too much," defendant said, "Well, I was drinking last night. I just had too much." Later at the police station, defendant said he had been drinking Old Crow, 100 proof, off and on during the night, but he did not know how much he had had.

At the scene of the accident, Swaim got within 2-3 feet of defendant. He did not detect any odor of alcohol on defendant's breath but did observe that defendant was slow in finding his license. After he passed over it two or three times, the officer finally pointed it out to him. On the way to the police car, defendant swayed and staggered. In Officer Martin's opinion, defendant's mental and physical faculties were appreciably impaired. At the station, he was given the walking and turning test, during which he swayed and was hesitant both in walking and in turning. At 7:20 a.m., W. D. Parks, a sergeant with the Winston-Salem police, after running a check test and ascertaining that the machine was operating properly, gave defendant a Breathalyzer test (which defendant volunteered to take). Parks is licensed by the State Board of Health to operate the Breathalyzer, and his training and experience were more than sufficient to qualify him as an expert in its use. The test which he administered showed that defendant had a blood-alcohol concentration of 0.20 per cent.

Defendant's evidence tended to show: He had spent the night preceding his arrest with a friend and his family at a cabin on High Rock Lake. During the evening, he had three or four mixed drinks in an 8-ounce tea glass. The mixture was Old Crow, 100 proof, Seven-Up, and ice. While drinking, defendant had some nicknacks — pea-

nuts and chips; otherwise, he had had nothing to eat since 12:00 noon. He had his last drink about 2:30 a.m. He went to bed between 2:30 and 3:00 a.m., and he left the cabin about 6:00 a.m. to drive the 33 miles to Winston-Salem. Defendant had had nothing to drink or eat between 2:30 a.m. and the time of the accident. As he approached the intersection of Corporation and Peters Creek parkways, the light changed on him. He applied his brakes and slid on the wet pavement. Mr. Swaim could not see him in time to stop, because defendant was in the middle lane, and other cars were waiting to turn left. Defendant volunteered for the Breathalyzer test because it had been at least four hours since he had had a drink, and he did not feel that the test "would turn out bad." He was shocked at the report and refused to sign it. Defendant's host and another overnight guest at the cabin testified that, in their opinion, defendant was not under the influence of alcohol when he left the cabin that morning at 6:00.

The jury's verdict was guilty as charged, and from the sentence imposed, defendant appealed.

*T. W. Bruton, Attorney General, and Bernard A. Harrell, Assistant Attorney General, for the State.*

*Yeager, Matthews & Clayton for defendant.*

SHARP, J. Defendant's assignments of error which comply with the rules of this Court raise only the question of nonsuit and the correctness of certain portions of the judge's charge. *In re Will of Adams,* 268 N.C. 565, 151 S.E. 2d 59.

The State's evidence — with and without the result of the Breathalyzer test — was more than sufficient to take to the jury the issue of defendant's guilt of the crime charged. The motions for nonsuit were properly overruled.

Defendant assigns as error the following portion of His Honor's charge:

> "As I have heretofore stated in other cases this week, 20-139.1 provides that where a person is charged with operating a motor vehicle under the influence and the test is given, that it raises the following presumption: 'If there was at that time .10 percent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor.'
>
> "Now, that is a presumption. It is a rebuttable presumption; that is, it may be rebutted by other evidence; it is not conclusive and, therefore, the defendant contends that if there was

such presumption that he has overcome it by other evidence. But the presumption created by the statute by the test is to be considered by you along with all the other evidence in passing upon the defendant's guilt or innocence."

The foregoing constitutes the court's entire explanation of the application of G.S. 20-139.1 to the evidence. It fails to meet the requirements of G.S. 1-180 and, in effect, places the burden upon defendant to rebut the statutory presumption arising from the results of his Breathalyzer test. This was error. In *State v. Cooke, ante,* 644, 155 S.E. 2d 165, decided simultaneously with this case, we have held that in G.S. 20-139.1, the General Assembly used the word *presumption* in the sense of a permissive inference or *prima facie* evidence, and that the trial judge should so instruct the jury. This appeal is controlled by *State v. Cooke, supra.* For the error in the charge there must be a

New trial.