Jeffrey A. STUEBGEN and Robert H.
Roelfson, Appellants (Defend-
ants below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4325.

Supreme Court of Wyoming.

April 12, 1976.

John A. Sundahl, Godfrey & Sundahl, Cheyenne, and John H. Bisbee, Bisbee, Geil & Kezer, Boulder, Colo., for appellant Stuebgen.

Terry W. Mackey, and Edward P. Moriarity of Urbigkit, Moriarity, Halle & Mackey, P. C., Cheyenne, for appellant Roelfson.

David B. Kennedy, Atty. Gen., H. J. Arnieri, Asst. Atty. Gen., Cheyenne, and Stuart S. Healy, Jr., Special Asst. Atty. Gen., Sheridan, for appellee.

Before GUTHRIE, C. J., Mc-CLINTOCK, THOMAS and ROSE, JJ.,

and ARMSTRONG, District Judge, Retired.

## UPON REARGUMENT

ARMSTRONG, District Judge, Retired.

Appellants were each charged separately, but tried together before a jury in Platte County, Wyoming, convicted and jointly appeal on charges of unlawfully and feloniously having in their possession with intent to deliver a controlled substance, marihuana. The issues here are:

1. Were defendants deprived of their rights to speedy trial?

2. Was the specific intent instruction erroneous?

We answer both questions affirmatively.

On March 19, 1972 the defendants were stopped by a highway patrolman for driving a car with only one Colorado license plate. During his investigation of the traffic offense the officer's suspicions were aroused that marihuana was concealed in the vehicle, whereupon he found a baggie of marihuana, a pipe and cigarette papers in the glove compartment. The men were forthwith arrested and one of them ordered to drive the car into town and to the police station. Two days later a justice of the peace issued a warrant to search the car where 31 baggies (1.86 lbs.) of the controlled substance were discovered in the trunk. A criminal complaint and warrant were then issued on March 22, and the defendants were brought before the justice of the peace on March 23 and were bound over to district court for trial. Both men deposited bail. Both defendants filed motions on May 30 to suppress their statements and the marihuana, and to dismiss the complaints. The motions were heard by the district court on June 13 and denied on June 16.

Whether the arrest, the initial discovery of the material in the glove compartment, the issuance of the search warrant, the delay of four days before bringing defendants before the justice of the peace initially, or the denial of the motion to suppress

and the first motion to dismiss were lawful, need not be considered in this opinion because the court reverses the conviction, judgment and sentence on other grounds.

Both defendants were arraigned together on their separate informations on May 9, 1972. They entered their pleas of not guilty and the court then announced that their cases would

"* * * be set down at the earliest time for trial. And I can't tell you definitely just when we will have a jury present in this county. It could be sometime this summer, but in greater likelihood it is going to be this fall sometime after the crops in this county have been harvested and the jurors will be more available for trial purposes."

Defense counsel, prior to the pleas and having reserved the right to present motions, then asked the court for twenty days to file their motions, and suggested that the trial date could be set at the time the motions were heard. The court then set the time for arguing these motions for June 13, 1972. The motions to dismiss and to suppress evidence were denied June 16, 1972. Thirteen months later the trial was set for September 12, 1973, fifteen months after the motions were denied and eighteen months after arrest.

On August 14, 1973 defendants filed new motions to dismiss the actions (supported by affidavit), on the ground that they had been deprived of their constitutional right to a speedy trial, asserting that eighteen months would elapse between the day of their arrests and trial date, and fifteen months between the order denying their motions and trial time; that the delay was not caused by the defendants; that the delay had impeded and impaired their occupations and academic pursuits and commitments; and that no proceedings or justification appeared why the trial was not held in the fall of 1972 as the court had indicated at the arraignment.

The motions were heard on September 11, 1973, the day before trial. The court

overruled the motions to dismiss for want of a speedy trial, saying that he regretted the delay; that his colleague had been ill and there was a delay in appointing a new judge; that he had been under heavy pressure in his three-county district to get everything done expeditiously; that he did not think defendants had been prejudiced "to the extent represented by counsel"; that defendants had not been incarcerated during the delay; and that if there were fault in not having the trial sooner it was the court's and not the State's attorney's. The State's counsel also added that a jury had not been called in his county in the fall of 1972 and that this was the second jury trial set and tried in the fall of 1973.

Rule 45(b), W.R.Cr.P. reads in part:

" * * * if there is unnecessary delay in bringing a defendant to · trial, the court may dismiss the indictment, information or complaint."

The appellants contend there was an unnecessary delay in bringing them to trial, that the delay violated their constitutional rights to a speedy trial, and that it was reversible error for the trial court not to have dismissed the informations.

The Sixth Amendment to the Constitution of the United States reads in part:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *."

Art. 1, § 10 of the Wyoming Constitution reads:

"In all criminal prosecutions the accused shall have the right * * * to a speedy trial by an impartial jury of the county or district in which the offense is alleged to have been committed."

The Fourteenth Amendment, Section 1 of the Constitution of the United States reads in part:

" * * * nor shall any State deprive any person of life, liberty, or property, without due process of law * * *."

Art. 1, § 37 of the Wyoming Constitution reads:

"The State of Wyoming is an inseparable part of the federal union, and the constitution of the United States is the supreme law of the land."

The judicial power of the United States is vested in the Supreme Court and shall extend to all cases arising under the Constitution of the United States. Article III, United States Constitution.

In 1967 the United States Supreme Court held that the Fourteenth Amendment of the United States Constitution made its Sixth Amendment guarantee of a speedy trial applicable to all states. *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Hence, in recognition of the supreme law of the land, the United States Supreme Court decisions on speedy trials are accorded full credit in deciding the question presented in this portion of the appeal. In addition, it becomes the duty of this court to re-examine the previous decisions of this court in the light of our own constitutional guarantee and the recent and later United States Supreme Court interpretations of the constitutional guarantee of speedy trials.

Two of our most recent cases on this constitutional question are *Boggs v. State*, Wyo., 484 P.2d 711 (decided in May, 1971), and *Shafsky v. City of Casper*, Wyo., 487 P.2d 468 (decided in September, 1971), reh. den., where lack of prejudice and lack of demand for trial, constituting waiver of the right, were substantial factors considered by the court in holding the right had not been violated. *Dickey v. Florida*, 398 U.S. 30, 90 S.Ct. 1564, 26 L. Ed.2d 26 (decided May 25, 1970), and the preview of things to come in Justice Brennan's concurring opinion, answered some of the questions raised in the Wyoming cases. One quote from *Dickey* is:

" * * * [T]he right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial." 398 U. S. at 38, 90 S.Ct. at 1569.

*Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) was decided after *Boggs* and *Shafsky.* It definitely rejected the demand-waiver theory, and Justice Powell, writing for a unanimous Court, for the first time set out flexible standards to consider in determining whether an accused has been deprived of his constitutional right to speedy trial. *Cosco v. State,* 503 P.2d 1403, 1405 (Wyo. 1972) points out the important four factors which *Barker* taught. In considering, first, the length of the delay (19 months in *Cosco*); second, the reason for the delay; third, the defendant's assertion of his right; and, fourth, prejudice to the defendant, the court found that Cosco's insanity pleas required time-consuming psychiatric examinations; that he had brought an action against the warden of the penitentiary which had to be disposed of before trial on the aggravated assault case; that he had filed numerous motions necessitating hearings before trial; that he had changed attorneys five times; that nothing appeared in the record indicating any unreasonable delay attributable to the prosecutor; and that he was not prejudiced since he was then serving four consecutive life sentences and most of the delays were for his benefit. The court held against Cosco.

*Cosco* cited several cases besides *Barker.* One was *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The main thrust in *Marion* was that the Sixth Amendment did not protect against delays occurring prior to arrest. However, the opinion said in part:

" * * * Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." 404 U.S. at 320, 92 S.Ct. at 462.

Since *Barker* and *Cosco,* the United States Supreme Court has taken another look at "prejudice" as it affects denial of speedy trial. In *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) the Arizona Supreme Court ruled that the defendant had failed to show prejudice to his defense, which, Arizona claimed, denied him relief under the Sixth Amendment. The court cited *Dickey* and *Barker.* In a per curiam decision the United States Supreme Court said:

"The state court was in fundamental error in its reading of *Barker v. Wingo* and in the standard applied in judging petitioner's speedy trial claim. *Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial:

" 'We regard none of the four factors identified above [length of delay, reason for delay, defendant's assertion of his right, and prejudice to defendant] as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.' " 414 U.S. at 26, 94 S.Ct. at 189.

*Moore v. Arizona,* supra and *Smith v. Hooey,* 393 U.S. 374, 379, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) are reminiscent of *State v. Keefe,* 17 Wyo. 227, 98 P. 122, 125 (1908) where the

" * * * ultimate question here involved is whether upon the facts the delay in prosecuting the defendant upon the pending information has resulted in depriving him of the right to a speedy trial within the meaning of the constitutional provision * * *."

The court held that the fact that defendant was in the penitentiary did not excuse prompt prosecution on another charge "and upon the facts the defendant has not had a speedy trial as provided in the Constitution."[1]

The end result of the decision in *Keefe* was a dismissal of the charge, which in turn is what happened in *Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L. Ed.2d 56 (1973).

The American Bar Association's Standards for Criminal Justice, specifically those standards relating to speedy trial, are noted by the United States Supreme Court in three of the recent cases cited above. The first sentence of § 2.1 of the Standards reads:

"A defendant's right to a speedy trial should be expressed by rule or statute in terms of days or months running from a specific event."[2]

Justice Erickson, Colorado Supreme Court and a member of the A.B.A. Standards Committee, authored an excellent article on speedy trials in 10 Houston Law Rev. 237 (1973), The Right to a Speedy Trial: Standards for its Implementation. At page 241, quoting from the A.B.A. Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial, he summarizes the public's interest in speedy trials as

"'* * * necessary to preserve the means of proving the charge, to maximize the deterrent effect of prosecution and conviction, and to avoid, in some cases, an extended period of pretrial freedom by the defendant during which time he may flee, commit other crimes, or intimidate witnesses.'"

He notes that *Barker v. Wingo*, supra did not fix a definite time limit because "[i]t goes further than the Constitution requires." He, however, approves "concrete and definite" time limits to avert difficulties in application. He lists 32 states which have set time limits by months or terms of court.[3]

Section 2.3 of the Standards points out various periods of time which should be excluded in computing the time for trial, e. g., delays due to proceedings concerning the defendant; congestion of trial docket attributable to exceptional circumstances; justifiable continuances; unavailability of the defendant; and other periods of delay for good cause.

■ In this case defense counsel at arraignment on May 9, 1972 suggested to the trial court that a trial date could be set when his motions were heard; the court then advised that it could not tell definitely when a jury would be called, and that it could be "this summer, but in the greater likelihood it is going to be this fall."

The prosecutor did nothing to expedite trial; nothing intervened from June, 1972 to August, 1973 to cause a delay in trial which began in September, 1973, so defendants then in August, 1973 filed their motions to dismiss for lack of a speedy trial alleging, among other things, that defendants had been lulled into believing that the causes would be dismissed because of the lapse of a year after the court's indication of trial date, and that their employ-

---

1. This case came to the supreme court on a reserved constitutional question of speedy trial.

2. The National Advisory Commission on Criminal Justice Standards and Goals, Standard 4.1, reads:

   "The period from arrest to the beginning of trial of a felony prosecution generally should not be longer than 60 days. In a misdemeanor prosecution, the period from arrest to trial generally should be 30 days or less."

   In the commentary it is said:

   "State statutes often set maximum periods for various stages of criminal prosecution. The time range in such statutes for felony prosecutions varies from 75 days to 6 months. The President's Commission recommended a normal period of 4 months."

3. In the list (10 Houston Law Rev. at 245) he includes §§ 7–234 and 7–235, W.S.1957, which were superseded by Rule 45(b), W.R. Cr.P. (1968) quoted herein. Section 7–235 would have required a delay of 3 terms of court to discharge a defendant.

ment and schooling were prejudiced by the delay.

The State, not having shown good cause for the delay or that it was necessary under Rule 45(b), W.R.Cr.P., has deprived the defendants of their Wyoming and United States constitutional right to a speedy trial. This court, therefore, invokes the rule of *Keefe* and *Strunk,* supra as the only logical remedy to prevent further delay, and dismisses the informations.

## SPECIFIC INTENT

The defendants having been charged and tried under § 35–347.31(a) W.S.1957, 1975 Cum.Supp. for unlawful possession of a controlled substance with intent to deliver, the trial court gave the jury the following instruction on specific intent:

"The Court further instructs the jury that as to the matter of intent we have no power to ascertain the certain condition of a man's mind. The best we can do is to infer it more or less satisfactorily from his acts. *A person is presumed to intend what he does. A man who performs an act which it is known will produce a particular result, is from our common experience presumed to have anticipated that result and to have intended it.*

"The intent with which an act is done is an act or emotion of the mind seldom if ever capable of direct and positive proof, and it is to be arrived at by such just and reasonable deductions or inferences from the acts and facts proved as the guarded judgment that a candid and cautious man would ordinarily draw therefrom, and must be proven beyond a reasonable doubt." (Emphasis added)

*Early Wyoming Cases*

The history of the law of specific intent in our state has been rather tortuous. It began in 1898 in *Bryant v. State,* 7 Wyo. 311, 51 P. 879 and its denial of rehearing

in 7 Wyo. at 318, 56 P. 596 (1899). The defendant was convicted of assault with intent to commit murder. In the rehearing opinion Chief Justice Potter says (56 P. at 597):

"* * * It may be that counsel understands our former opinion to disregard the principle of law that in cases of this character the specific intent must be proven as laid in the indictment or information. If so, he misinterprets the reasons given for our conclusion. We are well aware and in full accord with that doctrine which is well expressed in the case of *Roberts v. People,* 19 Mich. 401, cited by counsel, as follows: 'When a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proved as the act itself, and must be found by the jury as matter of fact before a conviction can be had. * * * And in all such cases the particular intent charged must be proved to the satisfaction of the jury; and no intent in law, or mere legal presumption differing from the intent, in fact, can be allowed to supply the place of the latter.'

"That court, however, in the same case, held further that it was unnecessary to prove the specific intent by direct, positive, and independent evidence; but as the court remarked by quoting from one of its own earlier decisions, 'The jury may draw the inference, as they draw all other inferences from any facts in evidence which to their minds, fairly prove its existence,' * * *.'"

The court found sufficient evidence of circumstances and conduct of the defendant to affirm the conviction. In the last sentence of the opinion on rehearing the court said (56 P. at 597):

"The jury had all the facts before them, and were instructed that to make out the crime both the assault and intent must be proved."

*Ross v. State,* 16 Wyo. 285, 93 P. 299, 305 (1908) followed *Bryant.*

The defendant in *Ivey v. State*, 24 Wyo. 1, 154 P. 589, 591 (1916) was charged and found guilty of assault and battery with intent to commit murder:

"It is contended that the court committed error in giving the following instruction over defendant's objection and exception; viz.:

" 'The court instructs the jury that a man is presumed in law to intend the probable and natural consequences of his own unlawful act. If one purposely shoots another with a deadly weapon, at or near a vital part, and in such a manner that death would probably ensue, all the other elements of the crime concurring, the jury would be justified in believing that the defendant intended to kill the prosecuting witness, even if death did not ensue.' "

The court held that it was error to give that instruction in that kind of a case, and said (154 P. at 591):

"The specific intent to kill must be proved as any other fact in the case, to the satisfaction of the jury. In the absence of evidence to the contrary, the presumption is that the assault was made with the intention to accomplish that which actually resulted from the assault. But, where an assault is thus committed, but which does not result in death, there is no presumption that the assailant intended to kill; that is to say, the presumption arising from the character of the assault with reference to the intent with which it is committed goes only to the result accomplished, and there is no presumption that he intended to do more than was actually accomplished. So, where the charge is that an assault was made with the intent to kill, and when death did not ensue, it is error to charge the jury that the presumption is that he

intended the natural and probable consequences of the assault."

Using the *Ivey* reasoning on the facts at Bar, even where possession is admitted but did not result in a sale or delivery, there is no presumption that the defendants intended a sale. 22 C.J.S. Criminal Law § 34, pp. 119–120. The questioned instruction here is actually a paraphrase of the instruction condemned in *Ivey*. It in effect tells the jury it may presume the defendants intended to deliver even if no delivery was made. At least the words permit the jurors to believe that the essential element of specific intent to deliver may be presumed if the act is known to produce a particular result. How could intent in this case be presumed when the result was not produced?

The chief investigator for the Attorney General was the State's principal witness on intent to sell. His premise was that 31 baggies of marihuana raised an inference of intent to sell because the marihuana was more than one man could smoke before it deteriorated.[4] On cross-examination he was reminded that there were two defendants involved, but he still maintained that 15½ baggies in possession was evidence of an intent to sell or deliver.

Further, the patrolman who made the arrest was asked on cross-examination during the suppression hearing:

"Q. It's a fair statement, is it not, that you had no idea what these boys intended to do with that marihuana * * *? You didn't have any idea at that time did you? A. No sir, I didn't."

Again the patrolman was asked:

"Q. Now did either of these boys tell you they intended to deliver that marihuana? A. No, sir."

*Berry v. State*, 51 Wyo. 249, 65 P.2d 1097, 1100 (1937) cited *Bryant v. State*, su-

---

4. On cross-examination the State's chief special agent was asked:
"Q. You mean in your experience with users in going through their houses, you can tell me what somebody's intention is

with respect to thirty lids just like that? A. Just like that. They would be arrested by me for possession with intent to deliver."

pra, and quoted from the Michigan case referred to in *Bryant* in part as follows: "\* \* \* ' "The jury may draw the inference, as they draw all other inferences, from any facts in evidence which to their minds fairly prove its [specific intent] existence," \* \* \* ' "

In *State v. Parmely,* 65 Wyo. 215, 199 P.2d 112, 118 (1948) the defendant was convicted of assault and battery with intent to kill and murder. The court *condemned* that part of an instruction on intent which read:

" 'The law warrants the presumption, or inference, that a person intends the results or consequences to follow an act which he intentionally commits, which ordinarily do follow such acts.' "

The court (Riner, C. J.) quoted the paragraph in *Ivey,* supra, which is set out in full under the *Ivey* citation herein. This and other erroneous instructions given constrained the court to remand for a new trial. *Rhodes v. State,* 462 P.2d 722 (Wyo.1969) followed *Parmely* in remanding the case for new trial for failure to give an instruction on specific intent.

In *State v. Woodward,* 69 Wyo. 262, 240 P.2d 1157, 1164–1165 (1952) the defendant was charged with assault and battery with intent to kill and murder but was convicted of the lesser included offense of aggravated assault. Defendant asked and was refused the following instruction:

" 'You Are Instructed that where an assault and battery is committed which does not result in the death of the person assailed, there is no presumption that the assailant intended to kill; and You Are Further Instructed that in the absence of evidence to the contrary, the presumption is that the assault was made with the intention to accomplish only that which actually resulted.' "

In quoting the same paragraph from *Ivey,* set out above, Chief Justice Blume noted that the proffered "instruction was evidently based upon what this court said in *Ivey v. State,*" and "that the statement was approved in *State v. Parmely* \* \* \*." He further said:

" \* \* \* [T]he requested instruction correctly stated an abstract principle of law, but, whether or not it was prejudicial error not to give the instruction is another matter. No exception was taken. \* \* \* [A]n accused cannot complain of an error in an instruction as to a higher degree of the crime, where the accused is convicted of a lower degree."

In *Murdock v. State,* 351 P.2d 674, 682 (Wyo.1960) defendant was charged and convicted of larceny of sheep. Over the defendant's objection the following instruction was given:

" 'The Court instructs the jury that the intent with which an act is done, is an act or emotion of the mind, seldom, if ever, capable of direct and positive proof, but it is to be arrived at by such just and reasonable deduction of inference from the acts and facts provided as the guarded judgment of a candid and cautious man would ordinarily draw therefrom.

" '*The law warrants the presumption, or inference, that a person intends the results or consequences to follow an act which he intentionally commits, which ordinarily do follow such acts.'*

"It is argued that this was not proper in the present case where intent was an essential element because the jurors were not informed of the particular act to which the instruction referred which in effect did away with the necessity of the proof of intent. No cases are cited to substantiate the charge of impropriety; and although the instruction does not appear to have been essential in the present case, was not in the words normally used, and is not very meaningful, we are unconvinced that any prejudice could have resulted therefrom. *It is a general rule applicable in all criminal cases, including those in which a specific intent is an element of the crime, that the accused is presumed to intend the neces-*

*sary or the natural and probable consequences of his unlawful voluntary acts.* State v. Vinson, 269 Wis. 305, 68 N.W. 2d 712, 70 N.W.2d 1." (Emphasis added)

The emphasized portion above is a quote from 22 C.J.S. Criminal Law § 35 which cites many cases, but most of them do not involve specific intent. In the context used in the present case 22 C.J.S. Criminal Law § 32 is applicable, where it is said at p. 117:

"A specific criminal intent is not presumed, and conviction cannot be had on the basis of an imputed intent. The general rule, stated infra § 34, that a criminal intention will be presumed from the commission of the unlawful act does not apply. No intent in law or mere legal presumption, differing from the intent in fact, can be allowed to supply the place of proof of the requisite specific intent."

It is time to re-examine the purported general rule underscored in the foregoing quotation from the *Murdock* opinion with respect to its applicability in specific intent cases. Unfortunately, it is being cited and used indiscriminately with increasing frequency in Wyoming criminal cases. In the first place, it impliedly questions *Bryant, Ivey, Ross, Berry, Parmely,* and *Woodward* without mentioning them. In the second place, apart from *Murdock, State v. Vinson,* 269 Wis. 305, 68 N.W.2d 712, reh. den. 70 N.W.2d 1 (1955), cited as authority for the rule and relied on in *Murdock,* is cited *only* in other Wisconsin cases when Shepard's Citations are viewed, e. g. *State v. Gould,* 56 Wis.2d 808, 202 N.W.2d 903 (1973). In the third place, only *Murdock* and *Vinson* are cited for the following statement appearing in 21 Am.Jur.2d, § 82, p. 164:

"According to some authorities, the presumption that a person intends the natural and probable consequences of his unlawful voluntary acts applies to all criminal cases, including those where specific intent is an element of the crime."

In *Vinson* the defendant was charged with assault with intent to do great bodily harm. The court said in 68 N.W.2d at 714:

"* * * Such an assault constitutes a felony and the specific intent to do great bodily harm is an essential element of the crime charged. Where the intent is an essential element the burden is on the prosecution to prove that the accused had such an intent, or to show facts from which it may be presumed."

That is the sole reference to presumption in the entire opinion. Apparently the court equated "presumed" with "inferred." This is indicated in the next sentence in the opinion which quotes from *Kuenzli v. State,* 208 Wis. 340, 242 N.W. 147, 149 (1932), reh. den.:

"'* * * [I]ntent is a state of mind which can be evidenced only by the words or conduct of the person who is claimed to have entertained it. The jury was under no obligation to accept the direct evidence of intent furnished by the defendant, and must be permitted to infer intent from such of defendant's acts as objectively evidence his state of mind. * * *'"

On rehearing in *Vinson* (70 N.W.2d 1, 4) the Wisconsin court, as the *Murdock* court, quoted as its only authority for the presumption of intent, a statement in 22 C.J.S. Criminal Law § 35, p. 121. It should be noted that the quotation underscored in *Murdock* omits two words at the very end which are included in the C.J.S. statement: "knowingly performed."

The *Vinson* instruction which caused the holding was quoted in the rehearing opinion as this (70 N.W.2d at 4):

"'When one person assaults another in such a manner that it is likely to inflict great bodily harm, then, when there are no circumstances to prevent or rebut the presumption, the legal and natural presumption is that great bodily harm was intended and such assault would be as-

sault with intent to do great bodily harm.'"

In *Vinson* the facts in evidence were that defendant was six feet three inches tall, weighed 240 pounds and was 27 years old; complainant was short, weighed 121 pounds and was 49 years old; and that defendant stamped on the victim as he lay on the floor, which Vinson denied but he did not deny that he kicked him, four ribs were broken, and the victim was hospitalized for 22 days.

The assault and the great bodily harm in *Vinson* were accomplished. The facts were such that the Wisconsin court in the last sentence of the original opinion said (68 N.W.2d at 714):

"* * * Contrary to appellant's contention, the evidence and the inferences from it which it was the province of the jury to draw establish beyond a reasonable doubt that the assault was made by Vinson with intent to inflict great bodily harm on Van Ouwerkerk."

The bodily harm in *Vinson*, like the larceny in *Murdock,* were fait accompli; not so in the case at Bar. No delivery was made. No competent, direct, or circumstantial evidence or inference was shown here of an intention to deliver. Only by use of the presumption could the jury find that these defendants intended to part with part of their pot. Lacking accomplishment of the delivery and other evidence of intent, the *Ivey* line of cases becomes important. It is therefore necessary to examine the presumption to ascertain whether it belonged in the instruction.[5]

One accused of a crime is presumed to be innocent until proven guilty beyond a reasonable doubt, and this presumption applies to every element of the crime charged. *Christoffel v. United States*, 338 U.S. 84, 89, 69 S.Ct. 1447, 93 L.Ed. 1826 (1949); 22A C.J.S. Criminal Law § 581. Article 1, § 11 of the Wyoming Constitution, like the Fifth Amendment to the United States Constitution, provides that no person shall be compelled to testify against himself in a criminal trial.

In the case at Bar the trial judge properly instructed the jury in both of those rules stating:

"The court instructs the jury that each defendant at the outset of the trial is presumed to be innocent. *He is not required to prove himself innocent or put in any evidence upon the subject.* In considering the testimony in the case you must look at that testimony and view it in the light of that presumption which the law clothes the defendant with, that he is innocent, and it is a presumption which abides with him throughout the trial of the case, until the evidence convinces you to the contrary beyond all reasonable doubt." (Emphasis added)

This court finds an irreconcilable conflict between that instruction and the presumption used in the one in issue. The charge here is possession with intent to deliver. It is indisputable that the intent to deliver is just as essential for the prosecution to prove with competent evidence as is the possession. *Neel v. State*, 452 P.2d 203, 204 (Wyo.1969), reh. den. 454 P.2d 241.

Unfortunately the intent instruction here permits the jury to accept without proof that defendants intended to deliver the marihuana because they performed

"* * * an act which it is known will produce a particular result, [and] it is

---

5. It is interesting to note that the instruction begins by disclaiming "power to ascertain the certain condition of a man's mind. The best we can do is to infer it more or less satisfactorily from his acts." Then it instructs on the presumption which might be construed as a convenient tool to use when the production of evidence of intent is difficult for the State. Its use, of course, calls for testimony of the defendant to rebut it. But it is not required that defendant take the witness stand, and such a shift in going forward with the evidence is denounced in *Tot v. United States*, infra. See McCormick on Evidence 2d Ed., pp. 807 and 812.

880

from our common experience presumed to have anticipated that result and to have intended it."

Boiled down, it instructs that since the possession of 31 baggies was proved the jury could presume that delivery was intended. Even arguendo that the presumption is permissible in some cases, is the predicate sound in this case? Is it known that possession will produce a delivery? Does "common experience" dictate that delivery is presumed to have been intended by the possession of 31 or 15 or 100 baggies of marihuana? The only evidence in the record on "common experience" was the narcotic agent's personal opinion, which was not gleaned from generally accepted knowledge.

*Statutory Presumptions and Rational Connection Rule*

■ This court follows a well-known rule that there must be a "rational connection between the fact proved and the ultimate fact presumed." However, "the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience." *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943).

In *Tot* the congressional act provided that it shall be unlawful for a person previously convicted of a crime of violence to receive a firearm which had been transported in interstate commerce, and

"'* * * possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this Act.'" 319 U.S. at 464, 63 S.Ct. at 1243.

The Supreme Court said (319 U.S. at 468, 63 S.Ct. at 1245):

"* * * [T]here seems no reasonable ground for a presumption that its purchase or procurement was in interstate rather than intrastate commerce. It is not too much to say that the presumptions created by the law are violent, and

inconsistent with any argument drawn from experience."

The court further said in declaring the statute unconstitutional as a deprivation of due process (319 U.S. at 469, 63 S.Ct. at 1246):

"[The statute] leaves the jury free to act on the presumption alone once the specified facts are proved, unless the defendant comes forward with opposing evidence. And this we think enough to vitiate the statutory provision.

"* * * [I]t is not permissible thus to shift the burden [of coming forward with evidence to rebut it] by arbitrarily making one fact, which has no relevance to guilt of the offense, the occasion of casting on the defendant the obligation of exculpation."

See to the same effect *State v. Schultz,* 1 Ohio Misc. 81, 205 N.E.2d 126, 129 (1964); *People v. Stevenson,* 58 Cal.2d 794, 26 Cal.Rptr. 297, 376 P.2d 297 (1962).

For an excellent discussion of presumptions in general see McCormick on Evidence, 2d Ed., p. 783 et seq. At page 802 he says:

"One ventures the assertion that 'presumption' is the slipperiest member of the family of legal terms, except its first cousin, 'burden of proof.'"

*Tot* is discussed there at page 812. Other United States Supreme Court cases (three of which involved narcotics) following or distinguishing *Tot* are found in McCormick under the *Tot* discussion. In all of these cases the jury was "clearly instructed that they were permitted, but not required, to find the presumed fact." McCormick on Evidence, 2d Ed., p. 817 and pp. 829–833.

A note in 22 Stan.L.Rev., p. 341, The Unconstitutionality of Statutory Criminal Presumptions, argues that the rational-connection test can never adequately protect a defendant's right to have all elements of the prosecution's case proved beyond a reasonable doubt.

In *State v. Edwards*, 269 Minn. 343, 130 N.W.2d 623 (1964), the syllabus of the court reads:

"In prosecution for the offense of possession of burglary tools in violation of Minn.St. 621.13, an essential element of which offense requires proof of specific intent to possess such tools for the commission of a crime, it was error for the trial court to instruct the jury that such intent could be presumed from the fact of possession. Where intent is an element of the offense charged, it can never be presumed. Following *State v. Higgin*, 257 Minn. 46, 99 N.W.2d 902, [906, (1959)] we hold that the instruction so substantially and materially prejudiced defendant's rights, notwithstanding failure to make timely objection, as to require a new trial."

The Minnesota statute provided, inter alia, that possession of such tools shall be *prima facie* evidence of an intent to use them in the commission of a crime. (This portion of the statute was later deleted by the legislature.) The trial court read the statute to the jury and explained to them that *"prima facie"* meant

"* * * at first sight or in the first instance, or, it is presumed to be true unless disproved by some evidence to the contrary." 130 N.W.2d at 624.

The court further explained to the jury the difference between an inference which may be drawn from proven facts and a presumption which is an inference the law requires the jury to draw from particular facts in the absence of convincing evidence to the contrary.

The defendant in *Edwards* asserted that he was denied due process because the instructions in effect reversed the presumption of innocence and authorized a presumption of guilt from the omission of defendant to testify to rebut the presumption. The Minnesota Supreme Court then discussed the "rational connection" between facts proved and the ultimate fact presumed. In its discussion the court cited many cases pro and con on statutory presumptions, as the United States Supreme Court did in *Tot*. It concludes in these words (130 N.W.2d at 626):

"* * * [O]ur court has consistently rejected the notion that presumptions of guilt should be permitted. We have always taken the position that an instruction as to a presumption of law which directs the jury to draw inferences from a given set of facts should not be given in a criminal case."

The court said it was not the appellate court's duty to determine whether the jury would be influenced by the nice distinctions between presumptions and inferences. To what extent the jury relied on the presumption in returning its verdict,

"[we] can only assume that the jurors were intelligent and practical people who took the court at its word and were guided by the plain language of the instruction."

*State v. Hansen*, 203 N.W.2d 216 (Ia. 1972) holds that that part of one instruction which quotes the statutory language that the presence of a stipulated percentage of alcohol in defendant's blood is "presumptive evidence" of intoxication, is permissible, but that it is erroneous when it converts it into a conclusive presumption if evidence is not produced to rebut it. See also *State v. Cuevas*, 53 Haw. 110, 488 P. 2d 322 (1971); *State v. Jent*, 270 N.C. 652, 155 S.E.2d 171 (1967); *State v. Cooke*, 270 N.C. 644, 155 S.E.2d 165 (1967); *State v. Bryant*, 245 N.C. 645, 97 S.E.2d 264 (1957); *State v. Kelly*, 218 Minn. 247, 15 N.W.2d 554, 162 A.L.R. 477 (1944); *State v. Brady*, 121 Ia. 561, 97 N.W. 62 (1903); and an annotation in 16 A.L.R.3d 748 on statutes creating inferences and presumptions of intoxication.

As said in *Hansen* (203 N.W.2d at 218):

"The right of the legislature to create evidentiary presumptions in criminal cases is no longer seriously challenged. Such laws are generally upheld as long as two conditions are satisfied: Such

presumptions may not be conclusive of the issue and there must be a rational relationship between the fact sought to be established and the one presumed."

*Kellogg v. Murphy*, 349 Mo. 1165, 164 S.W.2d 285, 294 (1942) states:

" * * * [A] statutory rule *evidentially* is no stronger than a similar judicial rule * * *."

*No Presumption of Specific Intent*

The presumption employed in *Murdock* and this case lacks the luster of being a statutory enactment but could be used, as has been said before, to avoid the State's presenting any evidence of specific intent, which is an essential element of the crime charged, and which must be proven beyond a reasonable doubt by evidence or inferences from evidence but not by the use of a presumption.

■ Some statutory crimes are merely malum prohibitum and no criminal intent is required. The doing of the prohibited act constitutes the crime. 22 C.J.S. Criminal Law § 30. In other crimes the act must be accompanied by a "criminal" intent. 22 C.J.S. Criminal Law § 29. Such intent may be implied from established facts and the accused may be presumed to intend what he does.

" * * * The exception to the general rule is where a specific intent is an element of a crime, in which case the specific intent must be proved as an independent fact and cannot be presumed from the commission of the unlawful act." *United States ex rel. Vraniak v. Randolph*, 261 F.2d 234, 237 (7th Cir. 1958), cert. den. 359 U.S. 949, 79 S.Ct. 733, 3 L.Ed.2d 681 (1959).

See also *State v. Cooper*, 113 N.J.Super. 34, 272 A.2d 557, 559 (1971); *State v. Cutshaw*, 7 Ariz.App. 210, 437 P.2d 962, 31 A. L.R.3d 830, 843 (1968); *Bryant v. State*, 4 Md.App. 572, 244 A.2d 446, 450 (1968); *Benchwick v. United States*, 297 F.2d 330, 333 (9th Cir. 1961); *People v. Fruci*, 188

Misc. 384, 67 N.Y.S.2d 512 (1947); and 22 C.J.S. Criminal Law §§ 32–33.

"Whenever a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proved as the act itself, and must be found as a matter of fact before a conviction can be had. No intent in law or mere legal presumption, differing from the intent in fact, can be allowed to supply the place of proof of the requisite specific intent." *McKeon v. Commonwealth*, 211 Va. 24, 175 S.E.2d 282, 284.

See also *Taylor v. Commonwealth*, 207 Va. 326, 150 S.E.2d 135, 141 (1966); *Kansas City v. Martin*, 369 S.W.2d 602, 606 (Mo. App.1963); *State v. Granger*, 199 S.W.2d 896, 898 (Mo.App.1947).

For a general discussion of the history and various categories of offenses requiring proof or no proof of intent, read Justice Jackson's opinion (unanimous court) in *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). At pp. 274–275 in 342 U.S. at pp. 255–256 in 72 S.Ct. it is said:

"Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury. State court authorities cited to the effect that intent is relevant in larcenous crimes are equally emphatic and uniform that it is a jury issue.[6]

* * * * * *

"It follows that the trial judge may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act. It often is tempting to cast in terms of a 'presumption' a conclusion which a court thinks probable from given facts. * * *

" * * * A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense. A presumption which would permit but not require

6. *Murdock* was a larceny case.

the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime. Such incriminating presumptions are not to be improvised by the judiciary. Even congressional power to facilitate convictions by substituting presumptions for proof is not without limit. *Tot v. United States,* * * *."

*State v. Ferguson,* 261 N.C. 558, 135 S. E.2d 626, 628 (1964) states:

"A person is presumed to intend the natural consequences of his act where specific intent is *not* an element of the crime. * * *

* * * * * *

"A person might intentionally and without justification or excuse assault another with a deadly weapon and inflict upon him serious injury not resulting in death, but such an assault would not establish a presumption of felonious intent, or the intent to kill. Such intent must be found by the jury as a fact from the evidence."

See also *State v. Schultz,* 1 Ohio Misc. 81, 30 Ohio 2d 420, 205 N.E.2d 126, 139 (1964).

In *Sullateskee v. State,* 428 P.2d 736, 738 (Okl.Cr.1967) defendant was charged with possession with intent to sell intoxicating liquor unlawfully. There was no evidence that defendant had sold or offered to sell any liquor. The court quoted 22 C.J.S. Criminal Law § 32 that specific intent cannot be presumed. See also *Ogelsby v. State,* 411 P.2d 974, 976 (Okl.Cr.1966).

In an evasion of income tax case, *McCarty v. United States,* 409 F.2d 793, 799–800 (10th Cir. 1969), cert. den. 396 U.S. 836, 90 S.Ct. 95, 24 L.Ed.2d 87 the following instruction was objected to on the ground that it shifted the burden of proof to the defendant:

"'As a general rule, it is reasonable to infer that a person ordinarily intends all of the natural and probable consequences of acts knowingly done or knowingly omitted.

"'So unless the evidence in this case leads the jury to a different or a contrary conclusion, the jury may draw the inference and find that the accused intended all of the natural and probable consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any acts knowingly done or knowingly omitted by the accused.'"

That instruction obviously differs from the *Murdock* dictum and the objectionable sentences in the instruction in the case at Bar. First, it speaks of an inference and not a presumption. Second, as the court said, it involves

"* * * a mere rule of circumstantial evidence not inconsistent with the burden of the government and the doctrine of reasonable doubt * * *."

Third, it emphasizes an element entirely overlooked in *Murdock,* that the act was knowingly done before the jury could infer that the actor intended the consequences. Fourth, this instruction adds a subjective feature not always found in like statements, viz., intending the consequences

"'* * * which one standing in like circumstances and possessing like knowledge should reasonably have expected to result * * *.'"

In any event the Tenth Circuit concluded that the instruction was not reversible error because other parts of the charge rendered

"it plain that a specific intent to evade payment of the tax had to be proved and could not be presumed." 409 F.2d at 801.

Many cases pro and con are cited in the footnotes. One of those cited is *Mann v. United States*, 319 F.2d 404 (5th Cir. 1963), cert. den. 375 U.S. 986, 84 S.Ct. 520, 11 L. Ed.2d 474. A later Fifth Circuit case, *United States v. Wilkinson*, 460 F.2d 725, 729 (5th Cir. 1972) discusses *Mann* at length when considering an instruction which included:

> " 'The law provides a rebuttable presumption that a man intends the natural and probable consequences of his own acts.' "

After the court set out an instruction, couched in terms of inference, which it thought would avoid the hazard of less precise instructions, it observed (460 F.2d at 733–734):

> " * * * Other or further instructions that speak in terms of the law's rebuttable presumptions, or one which indicates that an intended inference completes the government's proof unless other evidence to the contrary is produced, can amount to plain error. Such instructions have been universally criticized. Not only do such instructions carry the possibility of confusion, they are probably unnecessary. Surely the average juror already knows—though he may never have heard it articulated in legalistic jargon—that it would be reasonable to infer that a man intends what he consciously does. It is both unwise and pointless to muddle this reasonable notion and risk a violation of due process, [citing *Morissette v. United States*, supra] by hinting that a defendant may have to come forward with evidence on this issue, lest he be presumed a criminal.
>
> "We hold today that the use of the *Estes* [*Estes v. United States*, 335 F.2d 609 (5th Cir. 1964)] 'rebuttable presumption' language and *Mann's* 'So unless the contrary appears' language, should be discontinued; and where the nature of the case and the remaining portions of the charge do not alleviate the problem created, convictions based upon verdicts returned by juries so instructed will not be allowed to stand." [7]

To the same effect is *Parham v. United States*, 119 U.S.App.D.C. 242, 339 F.2d 741 (1964), cert. den. 379 U.S. 935, 85 S.Ct. 336, 13 L.Ed.2d 346.

The intent instruction objected to here reads in part again:

> "A person is presumed to intend what he does. A man who performs an act which it is known will produce a particular result, is from our common experience presumed to have anticipated that result and to have intended it." [8]

If the "particular result" invariably follows the performance of some act, the presumption would be valid. But if it might not invariably follow, or if the presumption is couched in *Murdock* language that defendant intends the necessary or natural and probable consequences of his unlawful act, the instruction then deals in probabilities. It says it is more probable than not that the result was intended. In that case, does it mean that 51% of the time the probabilities are that delivery will result from possession? If so, what happens to the sacrosanct burden of proving each element of the offense beyond a reasonable doubt? Or is it unreasonable to doubt the result when the probability is that there will not be a delivery 49% of the time? These are some of the questions that a court must answer before permitting a jury to presume the existence of an essential element of a crime. The use of the presumption assists the prosecutor in not having to produce evidence of intention,[9] at

---

7. For other recent federal citations to like effect see 1 Devitt and Blackmar, Federal Jury Practice and Instructions, 1975 Pocket Part, § 11.05. At p. 215 it is succinctly stated: "There is a substantial danger of reversal if a criminal jury is instructed that 'the law presumes' a particular material fact."

8. For federal instructions on specific intent and intent generally see 1 Devitt and Blackmar, Federal Jury Practice and Instructions, §§ 13.03 and 13.06.

9. See *Sims v. State*, infra.

least until the presumption is rebutted. But it clearly denies the jury of the opportunity to make up its own minds on the question of intention because there is no probative evidence introduced from which it can base its own finding. In this respect, the presumption instruction is diametrically opposite that of the use of deductions and inferences which the jury may logically and properly draw from facts and circumstances introduced which point toward intention. *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed. 57 (1969); *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *United States v. Matalon,* 425 F. 2d 70, 73 (2d Cir. 1970), cert. den. 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 76.

### Later Wyoming Cases

The defendant in *Nunez v. State,* 383 P. 2d 726, 728 (Wyo.1963) was charged with second degree murder—"purposely and maliciously without premeditation, kills another"—the court held "purposely" means "intentionally or deliberately." Citing *Parmely,* supra, the court said:

"* * * [W]here the accused was charged with assault and battery with intent to kill and murder, this court approved an earlier decision holding that the specific intent to kill must be proved as any other fact in a case. Doubt was expressed in the Parmely case as to whether it was shown beyond a reasonable doubt that he intended to commit a felony. Likewise we find doubt in the instant case as to whether it was shown beyond a reasonable doubt that Nunez *intended* to kill McCullum, or that he killed him on purpose.

"* * * Of course it is equally incumbent upon the state to prove circumstances from which intention might be justly inferred.

*   *   *   *   *   *

"Inferences contrary to direct testimony are not ordinarily sufficient to support a finding. Hence, in the absence of con-crete evidence on the part of the state to show intent, and in the absence of anything to contradict or impeach the testimony of defendant and his wife, *there can be no presumption of law on intent. State v. Parmely,* supra." (Emphasis added)

In *Deeter v. State,* 500 P.2d 68, 71 (Wyo.1972) this court recognized that intent may be inferred from the conduct of a defendant and from circumstantial evidence upon which reasonable inferences may be based.

In *State v. Stern,* 526 P.2d 344 (Wyo. 1974) the court held a statute unconstitutionally vague which read:

"Whoever * * * unlawfully breaks and enters * * * into any locked or sealed dwelling house * * *,"

etc., is guilty of a misdemeanor. The court held that "unlawfully" does not equate with "intentionally" or "knowingly" and without a mens rea the statute could proscribe an innocent breaking and entering.

In *Sims v. State,* 530 P.2d 1176, 1182 (Wyo.1975) an unlawful possession with intent to deliver a controlled substance resulted in a conviction from which defendant appealed on three grounds, one of which was whether intent to deliver could be inferred by the jury without specific instructions from the court. No instruction was objected to and none offered by defendant on the subject of intent. The court found at least three instructions that made it clear that intent to deliver

"* * * was a necessary ingredient of the offense and a material allegation that must be proved, in addition to possession."

The court again by dictum then permitted itself the gratuitous reference to *Murdock,* saying:

"* * * The instruction given [in *Murdock*] was a variation of the correct statement of the law voiced in that case,

" 'It is a general rule applicable in all criminal cases including those in which specific intent is an element of the crime, that the accused is presumed to intend the necessary or the natural and probable consequences of his unlawful voluntary acts.' "

The court in *Sims* then continued:

"Defendants in criminal cases do not care for it, but most intent instructions are directed toward an understanding of what proof beyond a reasonable doubt is necessary and assisting the State in this overwhelming burden, such as, for a further example, the instruction that intent is proven through the acts and words of a person and is seldom, if ever, capable of being shown by direct proof. The defendant has not even here demonstrated what specific instructions should have been given, but has spoken in generalities of sound but inapplicable principles."

Reversed, and informations dismissed.

McCLINTOCK, Justice (specially concurring).

I concur in the reversal of the conviction but inasmuch as the failure to provide a speedy trial results in a complete disposition of the case consider it unnecessary and therefore inappropriate for the opinion to go into the intricacies of what instruction should be given on specific intent. However important that question may be to the jurisprudence of our state, and without in any way denigrating the conclusions reached by the majority, I am of the opinion that we should adhere to the general rule recognized by this court in denying rehearing in *Chicago and North Western Railway Co. v. Town of Riverton*, 70 Wyo. 119, 127, 247 P.2d 660, 663 (1952) that

" \* \* \* It is true that this court will not pass upon moot questions, nor, generally upon questions not necessary to be decided, *and which are not likely to arise again in the further proceedings in the case.*" (Emphasis supplied)

While the original opinion in that case did pass upon a question which was not necessary for the disposition of the immediate appeal, it is clear that this was because if "we should not decide it, it is bound to arise again, and would, it would seem, require another appeal. In such a case it is our right, if it is not our duty, to decide the question." Id.

To me, this means that the court in reversing a judgment on one ground may and should properly consider other assignments of error which are pertinent to the retrial of the particular case then at issue, thus perhaps obviating the necessity of a new appeal. I subscribe to that philosophy and would on a proper occasion join in any opinion that does that. But the mere fact that an issue is important and may, or probably will, arise in some future case does not to my way of thinking present a proper excuse for a proper exercise of the judicial review. I ask myself why, if in this case it is proper to consider the matter of specific intent, was it not also proper to consider the questions of arrest, search and seizure, and delay in bringing the defendants before a magistrate, all of which were raised and argued in the briefs and oral argument.

I realize that this represents a policy question for the court, and I do not wish to raise any question as to the future weight or authority that will be accorded such expressions, but I do not want my concurrence in the reversal of the conviction to indicate either an agreement or disagreement with the views expressed in the majority opinion. Conceding that the question has been properly presented in this case, I would nevertheless wait for a case where the question was not only properly presented but was necessary for the disposition thereof. Otherwise it seems to me that we are issuing or not issuing opinions on important points of law merely as a majority of the court may at that particular time consider them of future importance. To me, this amounts to the issuance of advisory opinions, a procedure that we

ordinarily reject. See *West v. Willey*, Wyo., 453 P.2d 883 (1969); *Brimmer v. Thomson*, Wyo., 521 P.2d 574 (1974); and *Cranston v. Thomson*, Wyo., 530 P.2d 726 (1975).

GUTHRIE, C. J., concurs in the concurring opinion of McCLINTOCK, J.